# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

CHRISTINE MARGARET MORENO,

     *Plaintiff*,

vs.

3M COMPANY, a Delaware corporation;

     Case No.: 9:26-cv-80888

E.I. DU PONT DE NEMOURS
AND COMPANY, a Delaware corporation;

THE CHEMOURS COMPANY,
a Delaware corporation;

THE CHEMOURS COMPANY FC, LLC,
a Delaware limited liability company;

CORTEVA, INC., a Delaware corporation; and

DOES 1-25.

     *Defendants*.

_____/

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff, CHRISTINE MARGARET MORENO ("Plaintiff"), by and through

undersigned counsel, files this Complaint for Damages and Demand for Jury Trial

against Defendants 3M COMPANY, E.I. DU PONT DE NEMOURS AND

COMPANY, THE CHEMOURS COMPANY, The CHEMOURS COMPANY FC, LLC, and CORTEVA, Inc. and DOES 1-100 (collectively, "Defendants"), and alleges as follows:

## INTRODUCTION

1.     This is a civil action arising from Plaintiff Christine Margaret Moreno's prolonged and repeated exposure to toxic per- and polyfluoroalkyl substances ("PFAS"), or referred to as "forever chemicals," through contaminated groundwater and other environmental pathways in Stuart, Florida.

2.     For decades, Defendants designed, researched, developed, tested, manufactured, formulated, marketed, distributed, licensed, supplied, and sold numerous PFAS chemicals, including perfluorooctanoic acid ("PFOA"), perfluorooctane sulfonate ("PFOS"), and related fluorinated compounds, for widespread industrial, commercial, and consumer applications throughout the United States, including Florida. Defendants placed these PFAS chemicals and PFAS-containing products into the stream of commerce with the knowledge and expectation that they would be released into the environment during their ordinary manufacture, use, disposal, degradation, and foreseeable lifecycle.

3.     Despite this knowledge, Defendants failed to adequately investigate, warn of, disclose, or mitigate the dangers associated with PFAS exposure and instead

continued to manufacture and promote PFAS-containing products while concealing or minimizing the substantial risks posed to the public.

4.     As a direct and proximate result of Defendants' conduct and Plaintiff's exposure to PFAS contamination, Plaintiff developed severe and life-altering illnesses, including stage IV gastric cancer and metastatic thyroid cancer, requiring extensive medical treatment, invasive surgical procedures, and ongoing care.

5.     Plaintiff has suffered and continues to suffer significant physical injury, pain and suffering, emotional distress, loss of enjoyment of life, permanent impairment, substantial medical expenses, lost earning capacity, and other economic and non-economic damages, all of which were reasonably foreseeable consequences of Defendants' wrongful conduct.

6.     Through this action, Plaintiff seeks compensatory damages where permitted by law, costs, interest, and all other relief the Court deems just and proper.

## PARTIES

7.     Plaintiff CHRISTINE MARGARET MORENO ("Plaintiff") is a natural person and citizen of the State of Florida who resides in Martin County, Florida. At all times material hereto, Plaintiff lived, worked, owned property, consumed water, and was otherwise exposed to per- and polyfluoroalkyl substances ("PFAS") in and around Stuart, Florida.

3

8. As a result of prolonged exposure to PFAS contamination, Plaintiff has sustained serious and permanent injuries, including, but not limited to, stage IV gastric cancer and metastatic thyroid cancer, and has incurred substantial medical expenses, pain and suffering, emotional distress, loss of enjoyment of life, and other economic and non-economic damages.

9. Defendant 3M COMPANY ("3M") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 3M Center, St. Paul, Minnesota 55144. At all times relevant hereto, 3M designed, researched, developed, manufactured, formulated, marketed, distributed, supplied, sold, and placed PFAS chemicals and PFAS-containing products into the stream of commerce throughout the United States, including the State of Florida.

10. Defendant E.I. DU PONT DE NEMOURS AND COMPANY ("DuPont") is a corporation organized and existing under the laws of the State of Delaware. At all times relevant hereto, DuPont designed, researched, developed, manufactured, formulated, marketed, distributed, supplied, sold, and placed per- and polyfluoroalkyl substances ("PFAS") and PFAS-containing products into the stream of commerce throughout the United States, including the State of Florida.

11. Defendant THE CHEMOURS COMPANY ("Chemours") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1007 Market Street, Wilmington, Delaware

19801. At all times relevant to this action, Chemours designed, researched, developed, manufactured, formulated, marketed, distributed, supplied, sold, and placed per- and polyfluoroalkyl substances ("PFAS") and PFAS-containing products into the stream of commerce throughout the United States, including the State of Florida.

12.     Defendant THE CHEMOURS COMPANY FC, LLC ("Chemours FC") is a Delaware limited liability company. Upon information and belief, its sole member is The Chemours Company, a Delaware corporation with its principal place of business in Wilmington, Delaware. Accordingly, Chemours FC is a citizen of Delaware for purposes of 28 U.S.C. § 1332.

13.     At all times relevant to this action, Chemours FC designed, researched, developed, manufactured, formulated, marketed, distributed, supplied, sold, and placed per- and polyfluoroalkyl substances ("PFAS") and PFAS-containing products into the stream of commerce throughout the United States, including the State of Florida, and derived substantial revenue from those activities.

14.     Defendant **CORTEVA, INC.** ("Corteva") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 9330 Zionsville Road, Indianapolis, Indiana 46268. At all times relevant to this action, Corteva is named as a Defendant based upon its alleged successor liability and other legal responsibility arising from the corporate

restructuring, merger, separation, spin-off transactions, allocation agreements, indemnification agreements, retained-liability agreements, and related transactions involving E.I. du Pont de Nemours and Company, DowDuPont Inc., The Chemours Company, and affiliated entities.

15. Upon information and belief, the DowDuPont merger, subsequent corporate separations, spin-off transactions, allocation agreements, indemnification agreements, retained-liability agreements, and related restructuring documents may have allocated, retained, assumed, indemnified, or otherwise assigned responsibility for liabilities arising from historical PFAS-related operations, products, businesses, or conduct among Corteva, DuPont, Chemours, and related entities. The precise nature and extent of any such allocation or assumption of liability are presently within Defendants' exclusive possession, custody, and control and will be established through discovery.

16. Plaintiff is presently unaware of the identities of certain persons and entities whose acts or omissions may have caused or contributed to the injuries and damages alleged herein. Such persons and entities are designated as DOE Defendants 1 through 25, inclusive, solely because their identities and precise roles cannot presently be ascertained despite Plaintiff's reasonable investigation. Plaintiff will seek leave of Court to amend this Complaint to identify such persons or entities by their true names if and when their identities become known through discovery or

otherwise, to the extent permitted by the Florida Rules of Civil Procedure and applicable law.

17. Upon information and belief, the DOE Defendants include, without limitation, persons or entities that researched, designed, tested, manufactured, formulated, processed, supplied, distributed, marketed, transported, stored, disposed of, released, discharged, or otherwise handled PFAS chemicals or PFAS-containing products in a manner that caused or contributed to PFAS contamination affecting Plaintiff. Plaintiff further alleges that discovery is necessary to determine the identity, role, and degree of responsibility, if any, of each such DOE Defendant.

18. At all times relevant to this action, each named Defendant, and any DOE Defendant determined through discovery to have participated in the conduct alleged herein, individually and in concert with one or more other responsible parties, participated in the design, research, testing, manufacture, formulation, processing, marketing, distribution, promotion, sale, commercialization, or placement into the stream of commerce of PFAS chemicals or PFAS-containing products that were reasonably expected to reach consumers and the environment without substantial alteration.

19. Upon information and belief, each Defendant knew or reasonably should have known that PFAS chemicals are extraordinarily persistent in the environment, resist natural degradation, bioaccumulate in human tissue, contaminate

groundwater and drinking water supplies, and present significant risks of serious bodily injury and disease following prolonged exposure.

20.     At all times relevant, each Defendant purposefully availed itself of the privilege of conducting business within the State of Florida by manufacturing, marketing, distributing, selling, or otherwise placing PFAS chemicals and PFAS-containing products into the stream of commerce with the expectation that such products would be used, consumed, or otherwise reach Florida and its residents.

**DEFENDANTS' PFAS ACTIVITIES**

21.     At all times relevant to this action, Defendant **3M Company** researched, developed, manufactured, formulated, marketed, distributed, and sold PFAS chemicals, including fluorochemical compounds used in aqueous film-forming foam ("AFFF"), industrial processes, coatings, textiles, paper products, electronics, and numerous commercial and consumer applications. Plaintiff alleges that 3M placed such PFAS chemicals and PFAS-containing products into the stream of commerce with the expectation that they would be used throughout the United States, including Florida.

22.     At all times relevant to this action, Defendant E.I. du Pont de Nemours and Company researched, developed, manufactured, formulated, marketed, distributed, and commercialized PFAS chemicals and fluoropolymer technologies, including products utilizing PFOA and related fluorinated compounds. Plaintiff

alleges that DuPont distributed such products throughout the United States, including Florida, and that those products foreseeably contributed to environmental releases of PFAS.

23.     Plaintiff alleges that Defendants The Chemours Company and The Chemours Company FC, LLC, through the acquisition, continuation, or operation of fluorochemical businesses formerly conducted by DuPont, continued to manufacture, market, distribute, commercialize, or otherwise profit from PFAS chemicals and PFAS-containing products. The precise scope of each Chemours Defendant's historical and ongoing responsibilities, operations, and liabilities is presently within Defendants' possession and will be established through discovery.

24.     Plaintiff alleges that Defendant Corteva, Inc. is properly joined based upon its alleged successor liability and other legal responsibilities arising from the DowDuPont merger, subsequent corporate separations, allocation agreements, indemnification agreements, retained-liability agreements, and related restructuring transactions. Plaintiff further alleges that the precise allocation of liabilities among Corteva and the remaining Defendants is presently within Defendants' exclusive possession, custody, and control and will be established through discovery.

**JURISDICTION AND VENUE**

25.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because this is a civil action between citizens of different states

9

and the amount in controversy, exclusive of interest and costs, exceeds Seventy-Five Thousand Dollars ($75,000.00).

26.     Plaintiff is a citizen of the State of Florida. None of the Defendants is a citizen of the State of Florida for purposes of diversity jurisdiction.

27.     Defendant 3M is incorporated under the laws of the State of Delaware and maintains its principal place of business in Minnesota.

28.     Defendant DuPont is incorporated under the laws of the State of Delaware and maintains its principal place of business in Delaware.

29.     Defendant Chemours is incorporated under the laws of the State of Delaware and maintains its principal place of business in Delaware.

30.     Defendant Chemours FC is a Delaware limited liability company. Upon information and belief, none of its members is a citizen of the State of Florida.

31.     Defendant Corteva is incorporated under the laws of the State of Delaware and maintains its principal place of business in Indiana.

32.     This Court has personal jurisdiction over each Defendant because each Defendant has purposefully availed itself of the privilege of conducting business within the State of Florida by designing, manufacturing, marketing, distributing, selling, supplying, or otherwise placing PFAS chemicals and PFAS-containing products into the stream of commerce with the expectation and intent that such

products would be purchased, used, or otherwise reach consumers and communities within Florida.

33.    Plaintiff's claims arise directly out of or relate to Defendants' contacts with the State of Florida, including the manufacture, distribution, sale, marketing, promotion, and placement into the stream of commerce of PFAS chemicals and PFAS-containing products that allegedly contaminated groundwater, drinking water, and the environment within the State of Florida and caused Plaintiff's injuries.

34.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District, including Plaintiff's alleged exposure to PFAS contamination and the resulting injuries.

35.    Venue is specifically proper in the West Palm Beach Division because Plaintiff resides in Martin County, Florida, and the properties where Plaintiff alleges significant PFAS exposure are located in Stuart, Martin County, Florida, which lies within the territorial jurisdiction of this Division.

36.    Plaintiff further alleges that Defendants have transacted substantial business within the State of Florida, have derived substantial revenue from goods used or consumed in Florida, and have purposefully directed their activities toward Florida residents, making the exercise of jurisdiction by this Court consistent with

traditional notions of fair play and substantial justice under the United States Constitution.

## SCIENTIFIC BACKGROUND REGARDING PFAS

37.     Per- and polyfluoroalkyl substances ("PFAS") are a large class of synthetic fluorinated organic chemicals that have been manufactured and used in industrial processes and commercial applications since approximately the 1940s because of their resistance to heat, water, oil, grease, and chemical degradation.

38.     PFAS compounds possess exceptionally strong carbon-fluorine bonds, making them highly resistant to natural degradation in soil, groundwater, surface water, and the human body. As a result, PFAS are commonly referred to as "forever chemicals."

39.     Unlike many environmental contaminants that degrade over time, PFAS persist in the environment for extended periods, migrate through groundwater and drinking water systems, accumulate in living organisms, and progressively bioaccumulate in human blood and tissue following repeated exposure.

40.     Human exposure to PFAS occurs through multiple pathways, including the consumption of contaminated drinking water, ingestion of contaminated food, inhalation of contaminated dust or particles, and contact with contaminated soil and environmental media.

41.     Scientific and epidemiological research has demonstrated that PFAS compounds are capable of remaining in the human body for years after exposure and are associated with adverse biological effects involving multiple organ systems.

42.     Public health agencies and scientific organizations have recognized that prolonged exposure to certain PFAS compounds is associated with an increased risk of serious health conditions, including immune system dysfunction, endocrine disruption, thyroid disorders, liver injury, developmental effects, metabolic abnormalities, and certain forms of cancer.

43.     PFAS contamination has become a widespread environmental and public health concern throughout the United States, resulting in the contamination of public water systems, private wells, groundwater, surface water, soil, and residential communities.

44.     For decades, Defendants researched, developed, manufactured, formulated, marketed, distributed, and commercialized PFAS chemicals and PFAS-containing products for widespread industrial and commercial use while deriving substantial financial benefit from their sale and distribution.

45.     Beginning decades before Plaintiff's exposure, Defendants possessed or had access to published scientific literature, toxicological studies, epidemiological research, governmental reports, environmental testing, industry publications, and other information demonstrating that PFAS compounds persist indefinitely, migrate

readily through groundwater, bioaccumulate in humans, resist degradation, and present foreseeable risks of serious disease following prolonged exposure.

46.     Despite possessing or having access to such information, Defendants continued to manufacture, market, distribute, and place PFAS chemicals and PFAS-containing products into the stream of commerce without providing adequate warnings regarding their persistence, mobility, bioaccumulative properties, and potential health hazards.

47.     As a foreseeable consequence of Defendants' conduct, PFAS chemicals entered and continue to remain in groundwater, drinking water supplies, surface water, soil, and other environmental media, exposing communities and individuals, including Plaintiff, to prolonged and repeated PFAS contamination.

48.     Plaintiff's claims arise from prolonged exposure to PFAS contamination and the resulting injuries alleged herein, which Plaintiff alleges were caused by or substantially contributed to by Defendants' design, manufacture, marketing, distribution, sale, and commercialization of PFAS chemicals and PFAS-containing products.

**GENERAL FACTUAL ALLEGATIONS**

**A. Defendants' Development, Manufacture, and Commercialization of PFAS**

49.     At all times relevant to this action, Defendants designed, researched, developed, manufactured, formulated, marketed, distributed, supplied, sold,

licensed, or otherwise placed PFAS chemicals and PFAS-containing products into the stream of commerce throughout the United States, including the State of Florida.

50.     Defendants derived substantial revenues and commercial benefit from the manufacture and sale of PFAS chemicals and PFAS-containing products while promoting their widespread use in industrial applications, commercial products, and numerous consumer goods.

## B. Knowledge of PFAS Hazards

51.     For decades, scientific literature, regulatory investigations, and independent research have demonstrated that PFAS chemicals are environmentally persistent, bioaccumulative, and capable of remaining in the human body for extended periods.

52.     Upon information and belief, Defendants possessed or had access to information demonstrating that prolonged PFAS exposure presented significant risks to human health, including increased risks of serious disease and adverse biological effects.

53.     Throughout the relevant period, Defendants knew or reasonably should have known, through published scientific literature, toxicological studies, epidemiological research, governmental investigations, industry publications, and other available information, that PFAS chemicals were highly persistent, bioaccumulative, capable of contaminating groundwater and drinking water

supplies, and associated with serious adverse health effects. Despite such knowledge, Defendants continued manufacturing, marketing, distributing, and commercializing PFAS chemicals without providing adequate warnings or implementing reasonable measures to prevent foreseeable environmental contamination and human exposure.

## C. Environmental Contamination.

54.   Upon information and belief, groundwater and environmental media within and around Stuart, Martin County, Florida, have been contaminated with PFAS chemicals originating from one or more historical or ongoing sources involving PFAS-containing products or industrial activities.

55.   Upon information and belief, PFAS contamination affecting Plaintiff originated from one or more historical releases involving PFAS-containing products, including aqueous film-forming foam ("AFFF"), industrial manufacturing, waste disposal, wastewater discharges, commercial applications, and other foreseeable releases of PFAS chemicals into groundwater and environmental media. The precise contribution of each Defendant will be established through discovery.

## D. Plaintiff's Exposure

56.   Plaintiff's exposure occurred through repeated ingestion of contaminated drinking water, preparation of food using contaminated water, bathing, showering, dermal contact, inhalation of aerosolized water droplets, contact with

contaminated soil and dust, and other ordinary residential and occupational activities occurring over many years within Martin County.

57. Plaintiff thereafter developed serious and life-altering medical conditions, including stage IV gastric cancer and metastatic thyroid cancer, requiring extensive medical evaluation, treatment, surgery, and ongoing care.

## E. Resulting Injuries

58. As a direct and proximate result of Plaintiff's exposure to PFAS contamination and Defendants' conduct as alleged herein, Plaintiff has suffered severe physical injury, pain and suffering, emotional distress, loss of enjoyment of life, permanent impairment, substantial medical expenses, and other economic and non-economic damages.

59. Plaintiff continues to incur medical expenses, endure physical and emotional suffering, and sustain damages that are continuing and permanent in nature.

### PLAINTIFF'S EXPOSURE HISTORY AND RESULTING INJURIES

60. Plaintiff is a resident of Martin County, Florida and, for many years, lived, worked, owned property, consumed drinking water, and regularly interacted with the environment in and around Stuart, Florida.

61. During the relevant period, Plaintiff owned, occupied, maintained, or otherwise regularly used commercial properties, including but not limited to the

locations at approximately 4000 Southeast Federal Highway and 4300 Southeast Federal Highway, Stuart, Florida, and spent substantial periods of time at and around those locations.

62. Plaintiff routinely consumed water and was otherwise exposed to groundwater, dust, soil, air, and other environmental media in and around Martin County, and particularly Stuart, Florida, through ordinary residential, occupational, and daily activities.

63. Upon information and belief, the areas in which Plaintiff lived, worked, owned property, or otherwise spent substantial time were impacted by PFAS contamination originating from one or more historical or ongoing sources involving PFAS chemicals and PFAS-containing products.

64. Plaintiff's exposure to PFAS was repeated, continuous, cumulative, and occurred over an extended period of years, resulting in the accumulation of PFAS compounds within her body.

65. Subsequent laboratory testing revealed elevated levels of PFAS compounds in Plaintiff's blood, consistent with prolonged environmental exposure to PFAS chemicals.

66. Following years of exposure, Plaintiff was diagnosed with stage IV gastric cancer on August 22, 2024, requiring extensive medical evaluation, invasive treatment, surgical intervention, and continuing medical care.

67.     Plaintiff was further diagnosed with metastatic thyroid cancer, resulting in additional medical treatment, monitoring, and substantial physical and emotional hardship.

68.     Plaintiff's gastric cancer required the surgical removal of her stomach and other aggressive medical interventions intended to treat and control the progression of her disease.

69.     Plaintiff has undergone extensive medical treatment, including chemotherapy, targeted therapies, diagnostic procedures, imaging studies, laboratory testing, and continuing oncological care.

70.     As a direct and proximate result of her illnesses and treatment, Plaintiff has endured severe physical pain, nausea, vomiting, extreme weight loss, nutritional complications, fatigue, emotional distress, anxiety, loss of enjoyment of life, and permanent physical impairment.

71.     Plaintiff has incurred substantial medical expenses and other economic losses and reasonably anticipates incurring additional medical costs, treatment expenses, monitoring costs, and related damages in the future.

72.     Plaintiff alleges that her prolonged exposure to PFAS substantially contributed to the development and progression of her illnesses and resulting injuries.

73.     Plaintiff further alleges that Defendants' manufacture, distribution, marketing, and commercialization of PFAS chemicals and PFAS-containing products without adequate testing, warnings, or safeguards were a direct and proximate cause of the injuries and damages alleged herein.

74.     Plaintiff has suffered and continues to suffer permanent bodily injury, physical pain, emotional distress, medical expenses, loss of enjoyment of life, diminished earning capacity, and other economic and non-economic damages.

75.     Plaintiff alleges that prolonged PFAS exposure caused or substantially contributed to the development of the injuries alleged herein, including stage IV gastric cancer and metastatic thyroid cancer.

76.     Throughout the relevant period, Defendants possessed or had access to scientific data, toxicological research, environmental testing, epidemiological evidence, governmental findings, published literature, and other information demonstrating that PFAS chemicals were highly persistent in the environment, bioaccumulative in humans and wildlife, capable of contaminating groundwater and drinking water supplies, and associated with serious adverse human health effects.

77.     Despite such knowledge, Defendants failed to exercise reasonable care in the continued research, testing, manufacture, formulation, marketing, distribution, sale, risk communication, and post-sale management of PFAS chemicals and PFAS-containing products, and instead continued placing such products into the stream of

commerce without taking reasonable measures to prevent or reduce foreseeable harm.

## CAUSES OF ACTION
## COUNT I
## STRICT PRODUCTS LIABILITY – DESIGN DEFECT
### *(Against All Defendants)*

78. Plaintiff realleges and incorporates by reference paragraphs 1 through 77 of this Complaint as though fully set forth herein.

79. At all times material hereto, Defendants designed, researched, developed, tested, manufactured, formulated, processed, marketed, distributed, supplied, sold, licensed, and otherwise placed per- and polyfluoroalkyl substances ("PFAS") and PFAS-containing products into the stream of commerce for widespread industrial, commercial, and consumer use.

80. Defendants intended and reasonably expected that PFAS chemicals and PFAS-containing products would be used, handled, transported, disposed of, released into the environment, and ultimately reach consumers, communities, groundwater, drinking water supplies, and other environmental media without substantial alteration.

81. At the time Defendants' PFAS chemicals left Defendants' control, practical and technologically feasible alternative chemical formulations, alternative manufacturing processes, containment measures, and less persistent fluorinated or

non-fluorinated technologies existed or could have been developed through the exercise of reasonable care that would have materially reduced the foreseeable risks posed by Defendants' products.

82. The risks associated with the design of PFAS chemicals and PFAS-containing products outweighed any reasonably foreseeable benefits of such design, particularly where safer alternative designs, alternative chemistries, or other feasible measures to reduce or eliminate such risks were available or could have been developed through the exercise of reasonable care.

83. Defendants knew or reasonably should have known that PFAS chemicals possessed properties that rendered them capable of causing foreseeable and significant risks of environmental contamination and bodily injury following prolonged human exposure.

84. Defendants nevertheless continued to manufacture, formulate, market, distribute, and place PFAS chemicals and PFAS-containing products into the stream of commerce without adopting safer designs or otherwise eliminating or materially reducing the foreseeable risks posed by such products.

85. Plaintiff was exposed to PFAS contamination resulting from Defendants' products through prolonged contact with contaminated groundwater, drinking water, and other environmental media in Stuart, Martin County, Florida.

86.     Laboratory testing revealed elevated levels of PFAS compounds within Plaintiff's body, demonstrating substantial PFAS exposure and bioaccumulation.

87.     Following prolonged exposure to PFAS contamination, Plaintiff developed stage IV gastric cancer and metastatic thyroid cancer and suffered severe physical injury, extensive medical treatment, pain and suffering, emotional distress, permanent impairment, substantial medical expenses, loss of enjoyment of life, and other economic and non-economic damages.

88.     Plaintiff alleges that the defective design of Defendants' PFAS chemicals and PFAS-containing products was a direct and proximate cause of, or substantially contributed to, Plaintiff's injuries and resulting damages.

89.     As a direct and proximate result of Defendants' defective products, Plaintiff has sustained past and future damages, including but not limited to medical expenses, pain and suffering, emotional distress, permanent impairment, loss of enjoyment of life, lost earning capacity, and other compensable losses, in an amount to be determined by the trier of fact.

## COUNT II
## STRICT PRODUCTS LIABILITY – FAILURE TO WARN
*(Against All Defendants)*

90.     Plaintiff realleges and incorporates by reference paragraphs 1 through 77 of this Complaint as though fully set forth herein.

91. At all times material hereto, Defendants designed, researched, developed, manufactured, formulated, marketed, distributed, supplied, sold, licensed, and otherwise placed PFAS chemicals and PFAS-containing products into the stream of commerce for widespread industrial, commercial, and consumer use.

92. Defendants knew or reasonably should have known that PFAS chemicals are highly persistent, resistant to natural degradation, capable of bioaccumulation in human tissue, capable of contaminating groundwater and drinking water supplies, and capable of exposing individuals and communities to prolonged environmental contamination.

93. Defendants further knew or reasonably should have known that prolonged human exposure to PFAS chemicals presented foreseeable and significant risks of bodily injury and adverse health effects requiring appropriate warnings and risk disclosures.

94. Despite possessing such knowledge, Defendants failed to provide adequate instructions, warnings, or disclosures concerning the nature, persistence, environmental mobility, bioaccumulative properties, and potential health risks associated with PFAS chemicals and PFAS-containing products.

95. Defendants possessed a continuing post-sale duty to monitor scientific developments concerning PFAS chemicals and to communicate newly discovered

hazards and risk information to governmental agencies, downstream purchasers, commercial users, public water suppliers, physicians, and the public.

96. Defendants further failed to adequately warn governmental entities, regulatory authorities, downstream purchasers, commercial users, property owners, and the general public regarding the foreseeable risks associated with the manufacture, use, disposal, release, and environmental migration of PFAS chemicals.

97. At the time Defendants' PFAS chemicals and PFAS-containing products left Defendants' possession and control, the products were defective and unreasonably dangerous because they lacked adequate warnings and instructions sufficient to inform foreseeable users and affected communities of the risks associated with prolonged PFAS exposure.

98. Plaintiff was a foreseeable user and member of the class of persons reasonably expected to be exposed to PFAS contamination resulting from Defendants' products and conduct.

99. Plaintiff was exposed to PFAS contamination through groundwater, drinking water, and other environmental media in Stuart, Martin County, Florida over an extended period of time.

100. Laboratory testing subsequently revealed elevated concentrations of PFAS compounds within Plaintiff's body, demonstrating substantial PFAS exposure and bioaccumulation.

101. Had adequate warnings been provided concerning the persistence of PFAS chemicals, their tendency to accumulate within the human body, and their potential health risks, reasonable consumers, property owners, governmental entities, regulators, and affected communities could have taken actions to reduce, avoid, monitor, remediate, or otherwise minimize prolonged exposure.

102. As a direct and proximate result of Defendants' failure to provide adequate warnings and instructions, Plaintiff suffered prolonged PFAS exposure and thereafter developed severe and permanent injuries, including stage IV gastric cancer and metastatic thyroid cancer, requiring extensive medical treatment and causing substantial economic and non-economic damages.

103. Plaintiff alleges that Defendants' failure to provide adequate warnings and instructions was a direct and proximate cause of, or substantially contributed to, the injuries and damages alleged herein.

## COUNT III
## NEGLIGENCE
*(Against All Defendants)*

104. Plaintiff realleges and incorporates by reference paragraphs 1 through 77 of this Complaint as though fully set forth herein.

105. At all times material hereto, Defendants owed a duty to exercise reasonable care in the design, research, development, testing, manufacture, formulation, inspection, marketing, distribution, sale, promotion, licensing, and commercialization of PFAS chemicals and PFAS-containing products.

106. Defendants further owed a duty to exercise reasonable care to prevent foreseeable risks of environmental contamination and bodily injury arising from the intended, ordinary, and foreseeable use, disposal, release, migration, and persistence of PFAS chemicals and PFAS-containing products.

107. Defendants owed a duty to exercise reasonable care to design, research, test, manufacture, formulate, market, distribute, and sell PFAS chemicals and PFAS-containing products in a manner that would not create an unreasonable risk of injury to consumers, surrounding communities, and the environment.

108. Defendants further owed a continuing duty to investigate the health and environmental effects of PFAS chemicals, monitor emerging scientific evidence regarding their toxicity and persistence, conduct appropriate safety testing, communicate known or reasonably knowable risks, and take reasonable steps to reduce or eliminate foreseeable hazards associated with their products.

109. Defendants also owed a duty to exercise reasonable care after placing PFAS products into the stream of commerce by updating safety information, issuing appropriate warnings when new hazards became known or reasonably should have

become known, and implementing reasonable measures to mitigate or reduce ongoing exposure resulting from their products.

110. Defendants knew or reasonably should have known that PFAS chemicals possess unique chemical properties that allow them to persist indefinitely in the environment, contaminate groundwater and drinking water supplies, bioaccumulate within the human body, and expose surrounding communities to prolonged and repeated contamination.

111. Defendants nevertheless breached their duties of reasonable care by, among other things:

    a) Failing to adequately research and evaluate the long-term environmental and human health effects of PFAS chemicals;

    b) Failing to implement reasonable design, manufacturing, and risk-management practices to reduce or eliminate foreseeable hazards;

    c) Failing to adequately monitor, investigate, and assess the environmental consequences of PFAS releases;

    d) Failing to exercise reasonable care in the manufacture, distribution, marketing, and commercialization of PFAS chemicals and PFAS-containing products;

e) Continuing to manufacture and distribute PFAS chemicals despite knowledge or reason to know of their persistence and foreseeable risks of environmental contamination and human exposure; and

f) Failing to take reasonable measures to minimize or prevent foreseeable injury to individuals and communities exposed to PFAS contamination.

g) Failing to conduct adequate toxicological, epidemiological, environmental fate, and bioaccumulation studies before and after marketing PFAS chemicals;

h) Ignoring or disregarding scientific literature, governmental findings, and industry knowledge demonstrating that PFAS chemicals persist indefinitely, migrate readily through groundwater, and accumulate in human tissue;

i) Failing to warn governmental entities, water suppliers, downstream users, consumers, and the public regarding the foreseeable contamination of drinking water sources;

j) Failing to develop or implement feasible alternative formulations, manufacturing methods, containment measures, or safer substitute chemicals despite the availability of such alternatives;

k) Failing to implement adequate controls to prevent releases of PFAS into air, soil, surface water, groundwater, and public drinking water supplies;

l) Continuing to manufacture, market, distribute, and profit from PFAS chemicals despite knowledge that continued use would foreseeably contaminate the environment and expose surrounding communities to serious health risks.

112. Long before Plaintiff's exposure, Defendants knew or reasonably should have known, through published scientific literature, governmental investigations, toxicological studies, industry communications, and decades of experience with PFAS chemicals, that PFAS compounds would migrate through soil, groundwater, surface water, municipal drinking water systems, and other environmental pathways, thereby exposing surrounding communities to repeated and prolonged contamination.

113. Defendants failed to act as reasonably prudent manufacturers under the same or similar circumstances because they continued manufacturing and distributing PFAS chemicals despite possessing information that reasonable manufacturers would have recognized as requiring additional testing, warnings, exposure controls, product redesign, or discontinuation.

114. Plaintiff was a foreseeable person within the class of individuals likely to be exposed to PFAS contamination resulting from Defendants' conduct.

115. Plaintiff was repeatedly exposed to PFAS contamination through groundwater, drinking water, and other environmental media in Stuart, Martin County, Florida over an extended period of time.

116. Laboratory testing subsequently revealed elevated concentrations of PFAS compounds within Plaintiff's body, consistent with prolonged PFAS exposure and bioaccumulation.

117. Plaintiff thereafter developed stage IV gastric cancer, metastatic thyroid cancer, and other severe injuries requiring extensive medical treatment, surgical intervention, continuing medical care, and ongoing monitoring.

118. Defendants' negligent acts and omissions were a direct and proximate cause of Plaintiff's injuries. But for Defendants' negligent conduct, Plaintiff would not have sustained the prolonged PFAS exposure alleged herein. Alternatively, Defendants' conduct was a substantial contributing factor in causing Plaintiff's exposure, bioaccumulation of PFAS compounds, development of gastric cancer, metastatic thyroid cancer, and resulting injuries.

119. As a direct and proximate result of Defendants' negligence, Plaintiff has suffered and will continue to suffer permanent bodily injury, physical pain, emotional distress, mental anguish, disability, loss of enjoyment of life, substantial

31

medical expenses, diminished earning capacity, and other economic and non-economic damages.

120.   Plaintiff is entitled to recover all compensatory damages permitted by applicable law together with costs, interest, and such further relief as this Court deems just and proper.

## COUNT IV
## NEGLIGENT FAILURE TO WARN
*(Against All Defendants)*

121.   Plaintiff realleges and incorporates by reference paragraphs 1 through 77 of this Complaint as though fully set forth herein.

122.   At all times material hereto, Defendants owed a duty to exercise reasonable care in providing adequate warnings, instructions, and risk information concerning the foreseeable dangers associated with PFAS chemicals and PFAS-containing products.

123.   Defendants further owed a continuing duty to monitor scientific information concerning PFAS chemicals and to provide additional or updated warnings as new information regarding environmental persistence, bioaccumulation, and potential health risks became available.

124.   Defendants knew or reasonably should have known that PFAS chemicals are highly persistent, resistant to degradation, capable of contaminating

groundwater and drinking water supplies, and capable of accumulating within the human body following repeated exposure.

125.   Defendants further knew or reasonably should have known that individuals residing or working in areas affected by PFAS contamination could be exposed through ordinary and foreseeable activities, including the consumption of drinking water and contact with contaminated environmental media.

126.   Despite possessing such knowledge, Defendants negligently failed to provide adequate warnings or instructions concerning:

    a) the persistence of PFAS chemicals in the environment;

    b) the likelihood that PFAS would migrate through groundwater and drinking water systems;

    c) the tendency of PFAS compounds to bioaccumulate in human tissue;

    d) the need for monitoring, remediation, or exposure reduction measures; and

    e) the foreseeable risks associated with prolonged PFAS exposure.

127.   Defendants further failed to exercise reasonable care by failing to timely communicate material risk information to governmental agencies, downstream purchasers, distributors, commercial users, property owners, and members of the public who were foreseeably exposed to PFAS contamination.

128. Plaintiff was a foreseeable member of the class of persons likely to be exposed to PFAS contamination resulting from Defendants' conduct and products.

129. Plaintiff was repeatedly exposed to PFAS contamination through groundwater, drinking water, and other environmental media in Stuart, Martin County, Florida over an extended period of time.

130. Laboratory testing subsequently demonstrated elevated PFAS concentrations within Plaintiff's body, consistent with prolonged environmental exposure and bioaccumulation.

131. Had Defendants exercised reasonable care and provided adequate warnings or timely risk information, reasonable measures could have been taken to reduce, avoid, monitor, remediate, or otherwise minimize Plaintiff's prolonged PFAS exposure.

132. Plaintiff thereafter developed stage IV gastric cancer, metastatic thyroid cancer, and other severe and permanent injuries requiring extensive medical treatment, surgery, continuing care, and ongoing medical monitoring.

133. Plaintiff alleges that Defendants' negligent failure to warn and continuing failure to provide adequate risk information were a direct and proximate cause of, or substantially contributed to, Plaintiff's prolonged PFAS exposure and resulting injuries.

134. As a direct and proximate result of Defendants' negligent conduct, Plaintiff has suffered permanent bodily injury, pain and suffering, emotional distress, mental anguish, disability, medical expenses, diminished earning capacity, loss of enjoyment of life, and other economic and non-economic damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff CHRISTINE MARGARET MORENO respectfully requests that this Court enter judgment in her favor and against Defendants, jointly and severally to the fullest extent permitted by law, and award:

A. Compensatory damages in an amount to be determined at trial;

B. Past and future medical expenses;

C. Past and future pain and suffering, disability, physical impairment, disfigurement, inconvenience, mental anguish, emotional distress, and loss of capacity for the enjoyment of life;

D. Past and future lost earnings, loss of earning capacity, and other economic losses;

E. Costs of suit, including all taxable costs as permitted by law;

F. Pre-judgment and post-judgment interest as authorized by applicable law;

G. Such equitable, declaratory, or other relief as the Court deems just and proper; and

H. Any further legal or equitable relief to which Plaintiff may be

entitled.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh

Amendment to the United States Constitution, Plaintiff CHRISTINE MARGARET

MORENO hereby demands a trial by jury on all issues so triable and requests that

this action be placed upon the jury trial docket of this Court.


Dated: July 27th, 2026

Respectfully submitted,
/s/ Travis R. Walker
**TRAVIS R. WALKER, ESQ.**
Florida Bar No. 36693
The Law Offices of Travis R. Walker,
P.A.
612 SE Central Parkway
Stuart, Florida 34994
Telephone: (772) 708-0952
Email: travis@traviswalkerlaw.com
*Counsel for Plaintiff*

36

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of July, 2026, I electronically filed the foregoing Complaint for Damages and Demand for Jury Trial with the Clerk of the Court using the CM/ECF system. Because this is the initial pleading in this action, no defendant has yet appeared, and service of process will be effectuated in accordance with Rule 4 of the Federal Rules of Civil Procedure.

> */s/ Travis R. Walker*
> Travis R. Walker, Esq.
> *Counsel for Plaintiff*